1  ROBERT E. WHITE (California Bar No. 78567)
   E-mail: rew@rwhitesf.com
2  LAW OFFICES OF ROBERT E. WHITE
   177 Post Street, Suite 550
3  San Francisco, California  94108
   Telephone:  (415) 788-6151
4  Facsimile:  (415) 788-6154

5  Attorneys for Petitioners
   Haining NewStyle Hairun Acting Agency Co., Ltd. and
6  Guizhou NewStyle Media Co., Ltd.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         WESTERN DIVISION

11 | HAINING NEWSTYLE HAIRUN              | CASE NO.   2:20-CV-10640
   | ACTING AGENCY CO., LTD., a Chinese   |
12 | limited liability company, and GUIZHOU | **MEMORANDUM IN SUPPORT OF**
   | NEWSTYLE MEDIA CO., LTD., a          | **PETITION TO CONFIRM**
13 | Chinese limited liability company,    | **ARBITRATION AWARD**

14                    Petitioners,         (9 U.S.C. §201 et seq.)

15  vs.

16  JESSICA JUNG,

17                    Respondent.

18

19                          INTRODUCTION

20         This is a petition brought pursuant to the New York Convention (codified

21  as 9 U.S.C. §201 et seq.) seeking confirmation by this Court of a binding arbitration

22  award of the Beijing Arbitration Commission (the "BAC") issued in Beijing, China, on

23

24

MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

1  November 27, 2017, (2017) J.Z.C.Z. No. 1841 (the "Final Award").[1]  The Final Award
2  was in favor of Petitioners HAINING NEWSTYLE HAIRUN ACTING AGENCY
3  CO., LTD., a Chinese limited liability company (hereinafter "Haining NewStyle") and
4  GUIZHOU NEWSTYLE MEDIA CO., LTD., a Chinese limited liability company
5  (hereinafter "Guizhou NewStyle") (collectively "Petitioners").  Confirmation is sought
6  against Respondent Jessica Jung ("Jung").  The Petition and supporting declarations, as
7  we will show, meet the requirements for confirmation and this Court should therefore
8  confirm the Final Award and enter judgment against Respondent Jung as requested.

## I. JURISDICTION

### A. Subject Matter Jurisdiction

This Court has jurisdiction pursuant to 9 U.S.C. § 203, which provides that "[t]he district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding "fall[s] under the Convention" because it arises out of a commercial contract between Petitioners, Jung, and Jung's co-respondent in the Arbitration, Coridel Capital Management (HK) Limited ("Coridel").  Neither Petitioners nor Coridel are citizens of the United States.  See 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship is "entirely between citizens of the United States").  In addition, the contractual relationship between the parties "envisages

---

[1] An authenticated copy of the Final Award is attached to the accompanying Declaration of Lin Xiaolu In Support of Petition To Confirm Arbitration Award ("Lin Declaration") as Exhibit "A."  A certified translation of the Final Award is attached to the Declaration of Robert E. White In Support of Petition To Confirm Arbitration Award ("White Declaration") as Exhibit "A."

-2-

MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

1  performance or enforcement abroad and has a reasonable relationship with one or more
2  foreign states" in that it expressly involves the provision by Jung of services within the
3  People's Republic of China.  Id.  Moreover, the Final Award was made in the People's
4  Republic of China, which is a party to the New York Convention.
5       28 U.S.C. § 1331 also gives the Court subject-matter jurisdiction over this
6  proceeding, because it is a "civil action . . . arising under the . . . laws . . . or treaties of
7  the United States."
8       B.  Personal Jurisdiction
9       This Court has personal jurisdiction over Jung due to her extensive
10 contacts with and commercial dealings in the State of California.[2]  Jung, a "K-Pop"
11 (Korean pop music) singer and media personality, actively promotes herself by making
12 personal appearances in California, in addition to selling her music videos, recordings,
13 clothing lines and personal beauty products to residents of the State of California.
14 Jung is also a paid Internet "influencer" who, for a consideration, lends her imprimatur
15 to various lines of luxury fashion products for the purpose of promoting sales of such
16 luxury products.  Jung's artistic and commercial appeal in the United States is largely
17 to the Korean-American community, the single largest population of which resides in
18 the State of California.
19      II.  VENUE
20      Venue in this judicial district is proper under 28 U.S.C. § 1391(c)(3),
21 which provides that a defendant not resident in the United States may be sued in any
22 judicial district.

---

[2] Declaration of William Z. White in Support of Petition To Confirm Arbitration Award, ¶¶ 10 - 21.

-3-

MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

### III.  STATEMENT OF FACTS[3]

The Final Award concluded BAC case (2017) Jing Zhong Cai Zi No. 1841 (the "Arbitration"), which resolved a dispute between Petitioners and, <u>inter alia</u>, Respondent.  Respondent Jung, born in San Francisco, California,[4] is an American citizen who currently resides in Seoul, Republic of Korea.[5]

The dispute arose under an agreement dated February 29, 2016 (the "Agreement"),[6] pursuant to which Coridel, on behalf of Jung, granted Petitioner Guizhou Newstyle, among other matters, exclusive agency rights over Jung's performance activities in the territory of the People's Republic of China, excluding Hong Kong, Macao and Taiwan, for a three year period commencing February 29, 2016, to February 28, 2019.

As explained in the Final Award (Robert White Declaration Exhibit "A" at 36), on February 29, 2016, Guizhou Newstyle, as authorized by the Agreement, transferred its rights under the Agreement to Haining Newstyle.  Jung concurrently agreed in writing (Letter of Authorization executed February 29, 2016,[7] providing,

---

[3]  Except as indicated otherwise, the facts recited are supported by the Robert White Declaration and the Lin Declaration.

[4]  Declaration of William Z. White In Support Of Petition To Confirm Arbitration Award  ¶ 5 (quoting from the biography supplied by Simon & Schuster regarding Respondent's just-released book (in English), <u>Shine</u>).

[5]  Robert White Declaration ¶ 11 and Exhibit "H."  The record reflecting her entries and exits from the Republic of Korea has been redacted to omit her last known street address pursuant to Local Rule 5.2-1.

[6]  An authenticated copy of the Agreement is attached to the Lin Declaration as Exhibit "B."  A certified translation is attached to the White Declaration as Exhibit "B."

[7]  An authenticated copy of the bilingual Letter of Authorization is attached to the Lin Declaration as Exhibit "C."

-4-

MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

1  inter alia, that Coridel had worldwide rights of agency to represent Jung), expressly
2  approved Coridel's signing of the Agreement, and promised to perform and undertake
3  all of her obligations specified in the Agreement.

4        The Agreement provides (Article 11.1) that "[t]he signing, performance,
5  interpretation, validity and dispute settlement of the Contract shall be governed by the
6  laws and regulations of the People's Republic of China (mainland)."  The Agreement
7  further provides (Article 11.2) that "[a]ny dispute arising from the performance of the
8  Contract shall be settled by both parties through friendly negotiation.  If negotiation
9  fails, either party shall be entitled to submit the dispute to Beijing Arbitration
10  Commission for arbitration in accordance with the commission's arbitration rules at
11  that time. . . ."

12        As explained in the Final Award (see, e.g., Robert White Declaration
13  Exhibit "A" at 48-49), Petitioners had paid Coridel a total of USD $1,066,500 in fees
14  when they stopped making payments in August 2016 due to breaches of the Agreement
15  by Jung, including non-cooperation and attending events not arranged by Petitioners.
16  After Petitioners ceased making payments pursuant to the Agreement, Coridel served
17  notice that it had terminated the Agreement for non-payment.  After further specifying
18  the claimed breaches of the Agreement, Petitioners thereafter initiated arbitration
19  proceedings before the BAC as authorized by the Agreement.  Both Coridel and Jung
20  were named as Respondents.  Coridel counterclaimed.

21        Jung objected to the jurisdiction of the BAC over her, claiming that she
22  was not subject to the arbitration provision contained in the Agreement (referred to in
23  the English translation of the Final Award as the "Acting Agent Contract") because she
24  was not a signatory.  The BAC rejected her contention, holding as follows:

-5-

(I) The jurisdiction of the Arbitral Tribunal over the Case

The second Respondent of the Case [Jung] objected to the jurisdiction by declaring that she is not a signatory of the Acting Agent Contract. The second Respondent held that the arbitration agreement in the Contract is not binding on the second Respondent, so the arbitral tribunal has no jurisdiction over the second respondent. The arbitral tribunal prudently examined the relevant evidence produced by each party, and found at the time of signing the Contract; both parties regarded the copies of the first page and visa page of the second Respondent's Passport and Letter of Authorization thereof as the integrated part of the Contract. The second Respondent has never reacted against the decision above or filed any lawsuit to any court, but reached a modification agreement with the Applicants. Therefore, the arbitral tribunal believes that since the second Respondent agreed on regarding her Letter of Authorization as an inseparable part of the Contract, and she has a clear idea of acting as an essential performer of the Contract, her performance behaviors must comply with the agreements in the Contract and be limited by all terms hereunder, which include the agreement of settling dispute with arbitration. Therefore, according to the existing Arbitration Law of the People's Republic of China, the regulations of arbitration rules and above facts, the arbitral tribunal holds that the second respondent's objection to jurisdiction has no factual and legal basis, so the

>objection to jurisdiction shall not be established. Accordingly, the arbitral tribunal has jurisdiction over the second Respondent's performing actions in the Contract.

Final Award at 46.

Jung thereafter continued to participate in the arbitration.

Following two days of hearings and the receipt of extensive written evidence, the three-member BAC panel issued a detailed and well-reasoned award resolving both the claims of Petitioners against Coridel and Jung and the Coridel counterclaim.

The total net principal due and owing from Jung to Petitioners is USD $1,730,119.11, payable to Petitioners within ten days of the delivery date of the Final Award. Robert White Declaration ¶ 7.

The Final Award further provides that "[a]ny delay [in payment] will be dealt with according to Article 253 of the Civil Procedure Law of the People's Republic of China." Article 253 of the Civil Procedure Law of the People's Republic of China provides, in pertinent part, as follows:

>Where an enforcee does not perform the obligations for money payment within the period stipulated in a judgment, ruling or any other legal document, the enforcee shall pay an amount double the interest on the debts during the deferred performance period. . . .[8]

When no amount of interest is specified, Article 1 of the Interpretations of the Supreme People's Court on Issues Regarding Application of Law to Calculation of

---

[8] A true copy of Article 253 (in English) is attached to the White Declaration as Exhibit "F."

1  <u>Debt Interests during a Deferred Performance Period in Enforcement Process</u> (the

2  "Interpretations")[9] provides the following formula for payment of double interest:

3        Double amount of debt interests = outstanding monetary debts of

4        the debtor set in the effective legal instrument excluding the general

5        debt interests $\times 0.0175\%$ per day $\times$ deferred performance period.

6        As of November 15, 2020, interest had accrued on the Final Award in the

7  amount of $323,661.13, and interest continues to accrue at a rate of $302.77 per day.

8  White Declaration ¶ 8.[10]

9        IV.  <u>THE PETITION SHOULD BE GRANTED</u>

10        The Final Award is a well-reasoned award, issued by a respected

11  international arbitration tribunal in a proceeding in which all parties bound by the Final

12  Award actively participated.  There is no reason why the Final Award should not be

13  confirmed.

14        Under the New York Convention, as incorporated into United States law

15  through the Federal Arbitration Act, an arbitral award must be confirmed unless one of

16  a limited number of grounds for refusal or deferral applies:

17        Within three years after an arbitral award falling under the

18        Convention is made, any party to the arbitration may apply to any

19        court having jurisdiction under this chapter for an order confirming

20        the award as against any other party to the arbitration. The

---

[9] A true copy of the Interpretations (in English) is attached to the White Declaration as Exhibit "G."

[10] Ministry of Defense & Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Systems, Inc., 665 F.3d 1091, 1094, 1102-1104 (9th Cir. 2011) holds that this Court has authority to award pre and post judgment interest in addition to attorney's fees.

> court **shall** confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis supplied).

The party opposing confirmation has the burden of showing that such a ground applies. *See* Polimaster Ltd. v. RAE Systems, Inc., 623 F.3d 832, 836 (9th Cir. 2010):

> As the party seeking to avoid enforcement of the award, [the respondent] has the burden of showing the existence of a New York Convention defense. [That] burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly (internal citations omitted).

The grounds on which a court can refuse or defer confirmation under the New York Convention can be summarized as follows:

- the lack of a valid arbitration agreement between the parties;
- that the award resolves a dispute outside the scope of the parties' arbitration agreement;
- that the award resolves a dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;
- that the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;
- that the tribunal was composed and/or the arbitration used

        procedures inconsistent with the parties' arbitration agreement;

•    that the award is not yet binding or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or

•    that confirming the award would contravene the public policy of the country where confirmation is sought.

*See* New York Convention art. V.[11]

None of the foregoing grounds apply here.

In light of the extremely narrow grounds for denying confirmation, "[c]onfirmation is a summary proceeding that converts a final arbitration award into a judgment of the court." Ministry of Defense & Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Systems, Inc., 665 F.3d 1091, 1094 n.1 (9th Cir. 2011). The FAA does not contemplate a plenary action initiated by a complaint but rather a law and motion process. Termorio S.A. v. Electranta S.P., 487 F.3d 928 (D.C. Cir. 2007):

> Chapter 2 of the FAA incorporates and codifies the New York Convention. 9 U.S.C. § 201. However, the statute makes clear that "[Chapter 1 of the FAA] applies to actions and proceedings brought under [Chapter 2] to the extent [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." *Id.* § 208. Chapter 1, in turn, states that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law

---

[11] A true copy of the English version of the New York Convention is attached to the White Declaration as Exhibit "I."

for the making and hearing of motions, except as otherwise herein expressly provided." *Id.* § 6. Therefore, it appears that motions to enforce arbitral awards should proceed under motions practice, not notice pleading. Indeed,

> [o]ne of the clearest examples of the operation of Section 208 is its making motion practice under Section 6 applicable to proceedings under the [New York Convention]. Thus, an arbitration award under the Convention may be enforced by filing a petition or application for an order confirming the award supported by an affidavit. The hearing on such a petition or application will take the form of a summary procedure in the nature of federal motion practice. . . .

<u>Id</u>. at 940, citing 3 <u>Fed. Proc., L. Ed</u>. § 4:183 (1999).

## CONCLUSION

In light of the foregoing, the New York Convention requires confirmation of the Final Award.

Dated:  November 20, 2020.

        Respectfully submitted,

        LAW OFFICES OF ROBERT E. WHITE


        By:   /s/ Robert E. White
              ROBERT E. WHITE

        Attorneys for Petitioners
        Haining NewStyle Hairun Acting Agency Co.,
        Ltd. and Guizhou NewStyle Media Co., Ltd.

MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD