1  ROBERT E. WHITE (California Bar No. 78567)
   E-mail:  rew@rwhitesf.com
2  LAW OFFICES OF ROBERT E. WHITE
   177 Post Street, Suite 550
3  San Francisco, California  94108
   Telephone:  (415) 788-6151
4  Facsimile:  (415) 788-6154

5  Attorneys for Petitioners
   Haining NewStyle Hairun Acting Agency Co., Ltd. and
6  Guizhou NewStyle Media Co., Ltd.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         WESTERN DIVISION

11 | HAINING NEWSTYLE HAIRUN          | CASE NO. 2:20-cv-10640 FMO (JPRx)
   | ACTING AGENCY CO., LTD., a Chinese |
12 | limited liability company, and GUIZHOU | **FIRST AMENDED PETITION TO**
   | NEWSTYLE MEDIA CO., LTD., a      | **CONFIRM ARBITRATION**
13 | Chinese limited liability company, | **AWARD**

14             Petitioners,

                                       (9 U.S.C. §201 et seq.)
15 vs.

16 JESSICA JUNG,

17             Respondent.

18

19         HAINING NEWSTYLE HAIRUN ACTING AGENCY CO., LTD., a

20 Chinese limited liability company (hereinafter "Haining NewStyle") and GUIZHOU

21 NEWSTYLE MEDIA CO., LTD., a Chinese limited liability company (hereinafter

22 "Guizhou NewStyle") (collectively "Petitioners") hereby petition this Court for an

23 order confirming as a judgment of this Court the Arbitration Award issued in Beijing,

24 China, by the Beijing Arbitration Commission [hereinafter the "BAC"] on November

27, 2017, (2017) J.Z.C.Z. No. 1841 (the "Final Award"), as to Respondent Jessica Jung ("Jung"). This First Amended Petition is supported by the Memorandum and Declarations of Lin Xiaolu ("Lin Declaration"), Robert E. White ("Robert White Declaration"), and William Z. White ("William White Declaration"), all of which were filed with this Court on November 20, 2020 (Docket Nos. 2 through 8). In support of this First Amended Petition, Petitioners respectfully state as follows.

## NATURE OF ACTION

1. Petitioners bring this proceeding under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and Article III of the 1958 Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), to confirm the Final Award. The tribunal of three arbitrators (the "Tribunal") that issued the Final Award was duly constituted under the 2015 Arbitration Rules of the BAC.

2. The Final Award concluded BAC case (2017) Jing Zhong Cai Zi No. 1841 (the "Arbitration"), which resolved a dispute between Petitioners and, inter alia, Respondent.

3. Petitioners respectfully request that this Court confirm the Final Award and incorporate its terms into a judgment in favor of Petitioners and against Jung. Petitioners also seek to recover the fees and expenses incurred in confirming the Final Award, along with such further relief as this Court may find just and proper.

## PARTIES

4. Haining NewStyle is a Chinese limited liability company organized under the laws of the People's Republic of China, with its registered address at Room 1602-8, 16/F, Haining Film and Television Science Creation Center, China (Zhejiang)

Picture and Television Industry International Cooperation Experimental Zone Base, People's Republic of China.  Haining NewStyle's offices are located in Beijing, People's Republic of China.

5. Petitioner Guizhou NewStyle is a Chinese limited liability company organized under the laws of the People's Republic of China, with its registered address at No.1, Huayuan Commercial City, Shifu Street, Qifeng Street Office, Anlong County, Southwest Guizhou Autonomous Prefecture, Guizhou Province, People's Republic of China.  Guizhou NewStyle's offices are located in Beijing, People's Republic of China.

6. Respondent Jung is an American citizen who currently resides in the Republic of Korea.  Her last known address is in Seoul, Republic of Korea (the street address has been omitted in accordance with Local Rule 5.2-1).

7. This Court has jurisdiction over the subject matter of this proceeding under 9 U.S.C. § 203, which provides that "[t]he district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding "fall[s] under the Convention" because it arises out of a commercial contract between Petitioners, Jung, and Jung's co-respondent in the Arbitration, Coridel Capital Management (HK) Limited ("Coridel").  Neither Petitioners nor Coridel are citizens of the United States.  See 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship is "entirely between citizens of the United States").  In addition, the contractual relationship between the parties "envisages performance or enforcement abroad and has a reasonable relationship with one or more foreign states" in that it expressly involves

1  the provision by Jung of services within the People's Republic of China.  Id.  In

2  addition, the Final Award was made in the People's Republic of China, which is a

3  party to the New York Convention.

4             8.  28 U.S.C. § 1331 also gives the Court subject-matter jurisdiction over

5  this proceeding, because it is a "civil action . . . arising under the . . . laws . . . or

6  treaties of the United States."

7             9.  This Court has personal jurisdiction over Jung as more specifically

8  alleged hereinafter.

9             10.  Jung has divided the bulk of her time between South Korea and

10  California in furtherance of her career as an entertainer and Internet "influencer" until

11  her movements were inhibited by the Covid-19 pandemic.  Beginning in at least 2014,

12  Jung has made numerous appearances in California, most of which have been in

13  Southern California, for the purpose of furthering her economic interests and deriving

14  income from California and the United States generally.  Appearances in California

15  known to Petitioners include photoshoots, interviews, personal appearances to sell

16  merchandise, attendance at fashion events and to otherwise bring herself to the

17  attention of the Korean-American community, the single largest portion of which in

18  the United States is in Southern California.

19             11.  In or about 2018, Jung signed up with United Talent Agency

20  ("UTA"), based in Los Angeles, California, to represent her for music, film, television,

21  and endorsements in the United States. Jung is also represented, inter alia, by East

22  West Artists, which is also based in Los Angeles, California.  Jung and her sister,

23  Krystal Jung, have filmed two reality shows in the United States, which, on

24  information and belief, were shot at least in part in Southern California.  Jung has also

1    written a book, Shine, written in English (Jung was born in San Francisco, California
2    and is a native English speaker) and intended, at least in substantial part, for American
3    audiences.  Jung is planning to make a motion picture based on Shine, to be distributed
4    by Netflix, the revenues of which, as discussed infra, will flow through entities situated
5    in this judicial district.  Jung is under contract with Simon Pulse, an imprint of Simon
6    & Schuster, for a two-book contract, one of which was Shine.

7            12.    Virtually all of Jung's time in California is for the purpose of
8    monetizing her image in one way or another, and to do so Jung has purposefully
9    availed herself of the privileges and benefits made available to her by the State of
10   California as set forth above and as will be further revealed in the course of
11   jurisdictional discovery if the same is granted by the Court.  Jung's activities in
12   California are sufficiently continuous and systematic as to provide this Court with
13   general jurisdiction over Jung.  Requiring Jung to respond to this Petition and litigate
14   the same in this judicial district does not offend traditional notions of fair play and
15   substantial justice and is permitted by the Due Process Clause of the United States
16   Constitution.

17           13.    This Court also has in rem jurisdiction over Jung based on flows of
18   income derived and to be derived from her activities in California, including but not
19   limited to the activities identified in the preceding paragraphs, and in particular income
20   from her proposed movie to be distributed by Netflix, book revenues, and revenues
21   derived from the sale of her cosmetic and clothing lines from California residents.
22   Typically revenues derived from bookings secured by California-based talent agencies
23   (UTA and East West) are collected and banked in California by the respective agencies
24   who then remit the net sums owing (after commission and other expenses) to Jung.

1  14. Petitioner respectfully requests that the Court exercise its discretion to permit jurisdictional discovery to further establish its personal jurisdiction on the bases alleged above once service of this Petition is effected on Jung.

15. Venue in this District is proper under 28 U.S.C. § 1391(c)(3), which provides that a defendant not resident in the United States may be sued in any judicial district.

## BACKGROUND

16. The Final Award resolved a dispute between Petitioners, Coridel, and Jung that arose under an agreement dated February 29, 2016 (the "Agreement"), pursuant to which Coridel, on behalf of Jung, granted Petitioner Guizhou Newstyle, among other matters, exclusive agency rights over Jung's performance activities in the territory of the People's Republic of China, excluding Hong Kong, Macao and Taiwan, for a three year period commencing February 29, 2016, to February 28, 2019. An authenticated copy of the Final Award is attached to the Lin Declaration as Exhibit "A." A certified translation of the Final Award into English is attached to the White Declaration as Exhibit "A."

17. On February 29, 2016, Guizhou Newstyle, as authorized by the Agreement, transferred its rights under the Agreement to Haining Newstyle. Jung concurrently agreed in writing (Letter of Authorization executed February 29, 2016, providing, inter alia, that Coridel had worldwide rights of agency to represent Jung), expressly approved Coridel's signing of the Agreement, and promised to perform and undertake all of her obligations specified in the Agreement. An authenticated copy of the Agreement is attached to the Lin Declaration as Exhibit "B." A certified translation of the Agreement into English is attached to the White Declaration as

1 | Exhibit "B."

2 |     18. Petitioners had paid Coridel a total of USD $1,066,500 in fees when
3 | they stopped making payments in August 2016 due to breaches of the Agreement by
4 | Jung, including non-cooperation and attending events not arranged by Petitioners.

5 |     19. The Agreement provides (Article 11.1) that "[t]he signing,
6 | performance, interpretation, validity and dispute settlement of the Contract shall be
7 | governed by the laws and regulations of the People's Republic of China (mainland)."

8 |     20. The Agreement further provides (Article 11.2) that "[a]ny dispute
9 | arising from the performance of the Contract shall be settled by both parties through
10 | friendly negotiation. If negotiation fails, either party shall be entitled to submit the
11 | dispute to Beijing Arbitration Commission for arbitration in accordance with the
12 | commission's arbitration rules at that time. . . ."

13 |     21. After Petitioners ceased making payments pursuant to the Agreement,
14 | Coridel served notice that it had terminated the Agreement for non-payment. After
15 | further specifying the claimed breaches of the Agreement, Petitioners thereafter
16 | initiated arbitration proceedings before the BAC as authorized by the Agreement.
17 | Both Coridel and Jung were named as Respondents. Coridel counterclaimed.

18 |     22. Jung objected to the jurisdiction of the BAC over her, claiming that
19 | she was not subject to the arbitration provision contained in the Agreement (referred to
20 | in the English translation of the Final Award as the "Acting Agent Contract") because
21 | she was not a signatory. The BAC rejected her contention, holding as follows:
22 |     (I) The jurisdiction of the Arbitral Tribunal over the Case
23 |     The second Respondent of the Case [Jung] objected to the
24 |     jurisdiction by declaring that she is not a signatory of the Acting

-7-

FIRST AMENDED PETITION TO CONFIRM ARBITRATION AWARD

1  Agent Contract. The second Respondent held that the arbitration
2  agreement in the Contract is not binding on the second Respondent,
3  so the arbitral tribunal has no jurisdiction over the second
4  respondent. The arbitral tribunal prudently examined the relevant
5  evidence produced by each party, and found at the time of signing
6  the Contract; both parties regarded the copies of the first page and
7  visa page of the second Respondent's Passport and Letter of
8  Authorization thereof as the integrated part of the Contract. The
9  second Respondent has never reacted against the decision above or
10  filed any lawsuit to any court, but reached a modification
11  agreement with the Applicants. Therefore, the arbitral tribunal
12  believes that since the second Respondent agreed on regarding her
13  Letter of Authorization as an inseparable part of the Contract, and
14  she has a clear idea of acting as an essential performer of the
15  Contract, her performance behaviors must comply with the
16  agreements in the Contract and be limited by all terms hereunder,
17  which include the agreement of settling dispute with arbitration.
18  Therefore, according to the existing Arbitration Law of the People's
19  Republic of China, the regulations of arbitration rules and above
20  facts, the arbitral tribunal holds that the second respondent's
21  objection to jurisdiction has no factual and legal basis, so the
22  objection to jurisdiction shall not be established. Accordingly, the
23  arbitral tribunal has jurisdiction over the second Respondent's
24  performing actions in the Contract.

1  Final Award (White Decl. Exhibit "A" Part 2 of 2) at 46.

2      23.  Jung thereafter continued to participate in the arbitration.

3      24.  Following two days of hearings and the receipt of extensive written evidence, the three-member BAC panel issued a detailed and well-reasoned award resolving both the claims of Petitioners and the Coridel counterclaim.

    25.  The total principal due and owing from Jung to Petitioners is USD $1,730,119.11, payable to Petitioners within ten days of the delivery date of the Final Award.  Petitioners are informed and believe, and on the basis of such information and belief allege, that the ten days ran as of December 12, 2017.

    26.  No payment on the Final Award has been made on the part of Jung or the other respondent, Coridel.  The full amount of the Final Award remains due, owing and unpaid.

    27.  The Final Award further provides that "[a]ny delay [in payment] will be dealt with according to Article 253 of the Civil Procedure Law of the People's Republic of China."

    28.  Article 253 of the Civil Procedure Law of the People's Republic of China provides, in pertinent part, as follows:

> Where an enforcee does not perform the obligations for money payment within the period stipulated in a judgment, ruling or any other legal document, the enforcee shall pay an amount double the interest on the debts during the deferred performance period. . . .

    29.  When no amount of interest is specified, Article 1 of the Interpretations of the Supreme People's Court on Issues Regarding Application of Law

-9-
FIRST AMENDED PETITION TO CONFIRM ARBITRATION AWARD

to Calculation of Debt Interests during a Deferred Performance Period in Enforcement Process provides the following formula for payment of double interest:

> Double amount of debt interests = outstanding monetary debts of the debtor set in the effective legal instrument excluding the general debt interests $\times 0.0175\%$ per day $\times$ deferred performance period.

30.  As of November 15, 2020, interest had accrued on the Final Award in the amount of $323,661.13, and interest continues to accrue at a rate of $302.77 per day.

31.  Neither Coridel nor Jung applied to set aside the Final Award in the People's Republic of China, and their time for doing so has long expired.

## BASIS FOR CONFIRMATION OF THE FINAL AWARD

32.  The Final Award is a well-reasoned award, issued by a respected international arbitration tribunal in a proceeding in which all parties bound by the Final Award actively participated.  There is no reason why the Final Award should not be confirmed.

33.  Under the New York Convention, as incorporated into United Stateslaw through the Federal Arbitration Act, an arbitral award must be confirmed unless one of a limited number of grounds for refusal or deferral applies: "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

FIRST AMENDED PETITION TO CONFIRM ARBITRATION AWARD

34. The party opposing confirmation has the burden of showing that such a ground applies. *See* Polimaster Ltd. v. RAE Systems, Inc., 623 F.3d 832, 836 (9th Cir. 2010) ("As the party seeking to avoid enforcement of the award, [the respondent] has the burden of showing the existence of a New York Convention defense. [That] burden is substantial because the public policy in favor of international arbitration is strong, and the New York Convention defenses are interpreted narrowly" (internal citations omitted)).  Jung cannot meet that burden here.

35. The grounds on which a court can refuse or defer confirmation are:

- the lack of a valid arbitration agreement between the parties;
- that the award resolves a dispute outside the scope of the parties' arbitration agreement;
- that the award resolves a dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;
- that the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;
- that the tribunal was composed and/or the arbitration used procedures inconsistent with the parties' arbitration agreement;
- that the award is not yet binding or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or
- that confirming the award would contravene the public policy of the country where confirmation is sought.

*See* New York Convention art. V.

FIRST AMENDED PETITION TO CONFIRM ARBITRATION AWARD

36. None of the foregoing grounds apply here.

37. Accordingly, the New York Convention requires confirmation of the Final Award.

WHEREFORE, Petitioners pray for relief against Respondent Jessica Jung as follows:

a. For an order of this Court, under 9 U.S.C. § 207 and Article III of the New York Convention, confirming the Final Award and entering judgment thereon;

b. For entry of judgment in favor of Petitioners and against Jung that conforms to the Final Award, including USD $1,730,119.11 plus interest at 0.0175% per day from December 12, 2017 until entry of judgment;

c. For an award of costs incurred by Petitioners in bringing this proceeding, including reasonable attorneys' fees;

d. For an order of this Court retaining jurisdiction over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments which may be obtained by Petitioners against Jung;

e. For such other and further relief as the Court deems just and equitable.

Dated: January 11, 2021.            Respectfully submitted,

LAW OFFICES OF ROBERT E. WHITE


By:   /s/ Robert E. White
         ROBERT E. WHITE

Attorneys for Petitioners
Haining NewStyle Hairun Acting Agency Co., Ltd. and Guizhou NewStyle Media Co., Ltd.